JOHN SAGER, PETITIONER-APPELLANT, v. HOWELL TRUCKING CO., INC., RESPONDENT-RESPONDENT.

Hudson County Court
Law Division

Decided February 2, 1959.

114

*Messrs. Reich & McDevitt,* attorneys for petitioner-appellant (*Mr. Eugene A. Johnson* appearing).

*Mr. John W. Taylor,* attorney for respondent-respondent (*Mr. Charles P. Horton* appearing).

GRAF, J. C. C. This is an appeal from judgment of the Division of Workmen's Compensation of the New Jersey Department of Labor and Industry dismissing the petition on the grounds that "New Jersey did not have jurisdiction of the case."

It appears from the evidence that respondent Howell Trucking Co., Inc. had two trucking barns or terminals, one located in New York and the other in Jersey City.

Petitioner testified at the hearing in the Division that he first began work for respondent as a helper on a truck on January 2, 1954 and was hired in Jersey City, New Jersey, by a Mr. Frank Goetz, traffic manager of respondent; that he continued to work out of Jersey City terminal for about a year and a half; that the circumstances surrounding his hiring were that he was told Howell Trucking Co. needed help: "You go down and shape, you work one day or two and you start to get more time in, you join the Union and then you fill out an application, you get a number on the list, that you are an employee." Union Local 617 Jersey City had the contract with respondent. Petitioner joined said union and was a member of that local on the date of the accident; after he had been working for

about a year and a half in Jersey City, the shop steward of the union told him, "New York men was shaping the job in the New York terminal from a New York Local," and asked him if he "would volunteer to go over in New York to knock the guys out because we wanted to keep the Local 617; we wanted the work to stay in the New Jersey Local." From then on he went to the New York terminal and "kept working over there." There was testimony that he shaped up every morning in New York; that deductions were made for New York compensation and he paid New York State income taxes; that there was no change in his seniority and his vacation time was set in the contract of Local 617 Jersey City; that after going to New York he very rarely worked in Jersey again. "At times I would work in Jersey. Some times they would need a helper in New York. I would be in New York and go back to New Jersey and work in Jersey." That the system was "you could work in Jersey and need men in New York and you were sent to New York and sometime you go to New York and they need help in New Jersey, which was my turn, I would go back to Jersey." That he paid his own fare on these trips. On Friday, September 7, 1957, while "unloading truck in New York I slipped and fell off back of truck on the pavement and struck right side of my face, right arm, right shoulder and right knee." That he never made out an application for compensation in New York, but did fill out an accident report. When asked, "Did you ever receive notice from New York about a hearing?", he replied, "Not that I know of," but admitted he had received "some kind of literature from New York Compensation Board informing him that his case was closed."

Dr. Marcus, called by the petitioner, testified that "at the time of my examination he [the petitioner] made only complaints referable to his right knee and foreleg. He had no complaints to his face, right arm, and shoulder."

The respondent produced as witness its traffic manager, Frank Goetz, who testified he hired the petitioner in Jersey City on February 13, 1953; that during 1957 petitioner

worked in New York; that during 1958 he worked but one day in Jersey City; that respondent had a shape every morning, and that workers are selected according to their seniority and are hired on a daily basis and that salary payments are made out of New York.

When the accident occurred petitioner filled out a New York State Workmen's Compensation Board form C–2; that the accident occurred on Friday, September 27, 1957 and petitioner returned to work on Monday, October 7, 1957; that respondent had one contract with Local 617, Jersey City, covering both New York and New Jersey terminals; that they had a contract with the New York union but it does not cover drivers and helpers.

The Workmen's Compensation Board of the State of New York held a hearing in the matter on February 7, 1958 and recorded its decision "Closed disability did not exceed seven (7) days. Accident notice and causal relation established." Copy of this notice of decision and award was received in evidence.

The Deputy Director concluded that each hiring of the petitioner by the respondent "was an independent contract because if Sager did not shape up for a week he did not work, but the men got hired for that particular shape on that particular day whatever it was." He dismissed the petition, finding that "New Jersey did not have jurisdiction of this case."

There can be no doubt that when the petitioner was first hired in Jersey City, the provisions of the New Jersey Workmen's Compensation Act applied to his hiring. The scheme of compensation set forth in article II of that act (*R. S.* 34:15–7 *et seq.*) enters "by operation of law into every contract of hiring made in this State unless there be an affirmative rejection of the plan for the alternative common law liability for negligence as modified by the provisions of article I of the Act." *New Amsterdam Casualty Co. v. Popovich*, 18 *N. J.* 218, 226 (1955). And every day that the petitioner shaped in Jersey City and was hired he came under the provisions of that act.

However, after a time and at the mere suggestion of the union shop steward, petitioner voluntarily went to New York terminal of the respondent and shaped there. Did this voluntary transfer of his working *situs* terminate the contract originally entered into in New Jersey?

Petitioner contends that it did not and relies heavily on *Bowers v. American Bridge Co.*, 43 *N. J. Super.* 48 (*App. Div.* 1956), affirmed 24 *N. J.* 390 (1957). In that case the petitioner, on or about July 10, 1951, received a call from his union to report at its office in Trenton, N. J. Upon reporting he was informed that there was work for him with the respondent at Morrisville, Pa.; he was informed of the type of work and the amount of salary. He proceeded to the place of employment and worked as a regular employee, except for a three-week leave of absence from December 1951 until the time of the accident in 1952. The Bridge Company contended that his return to work after the leave constituted a rehiring and that a new contract was entered into in Pennsylvania. The court held that the leave of absence did not terminate the original hiring and continuous employment under it.

When the petitioner in the instant case went to New York he did so voluntarily. The respondent did not ask or direct him to report for work at its New York terminal, and the union shop steward but offered the suggestion he "volunteer to go over." And once in New York he shaped up on a daily basis, when he saw fit, and was hired and paid on a daily basis, if there was work for him. He was not a steady employee in Jersey City or New York.

This court finds that each day's hiring of the petitioner constituted a new contract of employment, and that since the petitioner was hired in New York on the date of the accident, the New Jersey Workmen's Compensation Act does not apply.

An independent review and appraisal of the facts and the law leads this court to the same conclusion as that reached by the Deputy Director.

The petition, therefore, is dismissed.